AMOCO OIL COMPANY, Plaintiff,

v.

UNITED STATES DEPARTMENT OF ENERGY et al., Defendants;

American Agri-Fuels Corporation, Intervening Defendant.

Civ. A. No. 79-2671.

United States District Court, District of Columbia.

June 10, 1980.

Stephen A. Herman, Robert J. Butler, Washington, D. C., for plaintiff.

Paul G. Wallach, Judith A. Mather, Dept. of Energy, Washington, D. C., for defendants.

Norman D. Shutler, Theodore J. Garrish, Washington, D. C., for intervening defendant American Agri-Fuels Corp.

Harry R. Silver, Washington, D. C., for amici Texaco & Mobil Oil.

## MEMORANDUM AND ORDER

GESELL, District Judge.

Cross-motions bring the parties before the Court for review of a decision of the Department of Energy ("DOE") granting administrative relief to American Agri-Fuels Corporation ("AAF"), a manufacturer of gasohol.

On February 16, 1979, AAF filed with the Office of Hearings and Appeals ("OHA") of DOE a request for exception relief pursuant to 42 U.S.C. § 7194(a) (1976 & Supp. II 1978). Claiming inability to overcome the restrictive impact of the agency's Mandatory Petroleum Allocation Regulations, 10 C.F.R. Part 211 (1979),[1] AAF sought a large allocation of unleaded gasoline for use in the production of gasohol so that it could become a new entrant into the petroleum products market.

On May 9, 1979, OHA issued a proposed decision and order which, among other things, directed the Amoco Oil Company ("Amoco") to sell unleaded gasoline to AAF. After a further administrative hearing at which Amoco and others testified, OHA reduced Amoco's obligation to supply AAF but still granted the relief sought by AAF in modified form. Amoco then brought its challenge to the order before the Court. AAF has intervened as a defendant, and all parties have briefed and argued the issues. The full administrative record is on file and has been reviewed.

Gasohol is a product consisting of unleaded gasoline blended (or mixed) with ethyl alcohol in a 9-to-1 ratio. It can be used in present automobile engines as a substitute for unleaded gasoline. AAF, a company located in Kansas City, Missouri, was incorporated in September, 1978, specifically for the purpose of producing and selling gasohol in several midwestern states. The company has built a pilot facility and is constructing a full-scale plant to produce alcohol from agricultural products. It plans to combine the alcohol with unleaded gasoline and sell the final product to distributors in the mid-West area.

AAF approached some 51 suppliers in the mid-West. None would furnish it gasoline, due apparently to the agency's allocation regulations which require suppliers first to satisfy gasoline needs of existing customers. 10 C.F.R. § 211.9 (1979). In view of periodic and often acute shortages of supply, the regulations perforce disadvantage a potential entrant into the petroleum business like AAF. Anticipating that such instances of hardship or inequity would arise, Congress and DOE have provided for an exception procedure which in the absence of an available voluntary supply AAF chose to invoke to meet its needs. *See* 42 U.S.C. § 7194 (1976 & Supp. II 1978); 10 C.F.R. §§ 205.50 *et seq.* (1979). The company prevailed in the exception procedure, and consequently was assured a maximum of some 50 million gallons of gasoline over the twelve months ending in August, 1980. As one of several

---

1. The regulations were promulgated pursuant to the Emergency Petroleum Allocation Act of 1973 ("EPAA"), 15 U.S.C. §§ 751 *et seq.* (1976).

designated suppliers,[2] Amoco was ordered to supply some 20 percent of this total, through sales of relatively small amounts during the first ninety days building to quite substantial transfers over the final six months when AAF was expected to be more fully operational.

Amoco strenuously objects to the granting of this exception relief. It is urged that exceptions to the agency's regulatory allocation program can be granted solely to prevent an unintended injury, and that the record shows no such injury has been or will be suffered by AAF. Further, Amoco contends that OHA cannot entertain an exception application where, as here, other more appropriate procedures are available. Should the government decide to promote gasohol production by new entrants in the market, plaintiff argues that a rulemaking proceeding is both appropriate and necessary to meet the major policy issues presented. Finally, Amoco claims that the record before the agency lacks substantial evidence to support OHA's determinations, and objects on constitutional grounds to the failure to afford certain procedural protections.

It is important to place this litigation in proper perspective. Amoco filed its complaint in October, 1979, over a month after the agency order took effect. No temporary or preliminary relief was sought, presumably because nothing approaching irreparable injury could be shown. AAF has purchased considerably less gasoline than its allocated supply, due to construction problems that delayed initiation of its larger facility and also because Amoco and other designated suppliers have imposed harsh credit terms. Moreover, unexpected alterations in supply conditions since August, 1979, have resulted in a glut of unleaded gasoline on the mid-West spot market, further attenuating the impact of the challenged forced sales.

Under these circumstances, an extension of exception relief beyond August, 1980, is at best questionable. There is no indication that Amoco, any of its dealers or jobbers, or independent distributors in the mid-West,

have been injured substantially or otherwise by the effects of this exception award. Were the Court to determine that the exception was erroneously granted, it is not at all clear how the present situation would be changed. With three months to run on a supply arrangement that apparently has been overtaken by events, any harm suffered by plaintiff may well be *de minimis.*

At the heart of the controversy lies Amoco's objection to creating a competitor in the gasohol market. The company has its own long-term plans for the production and marketing of gasohol, and would prefer to see AAF functioning solely as an alcohol manufacturer, supplying that additive to existing refineries for blending and sale through the regular marketing network. It is apparent that DOE desired to encourage AAF's entry for contrary policy reasons, and the issue boils down to whether or not the statutory and regulatory framework permit the result reached here.

Exception relief may be granted to alleviate or prevent special hardship or inequity primarily attributable to DOE's own regulatory program. See 10 C.F.R. § 205.-55(b)(2) (1979); Exceptions and Appeals Guidelines, 7 En. Mngm't Rep. (CCH) ¶ 80,006 (1978). Each application is reviewed on its own facts and circumstances, and both Congress and the courts have vested broad discretion in the agency's judgment. See generally *Powerine Oil Co. v. FEA*, 536 F.2d 378 (Em.App.1976); *Pasco, Inc. v. FEA*, 525 F.2d 1391 (Em.App.1975); *Bonnaffons v. DOE*, 492 F.Supp. 1276 (D. D.C. 1980). Although agency discretion is not unlimited, liberal construction of the exception criteria is encouraged in order to effectuate underlying statutory objectives. No order granting such relief will be enjoined unless in excess of the agency's authority or based upon findings not supported by substantial evidence. 12 U.S.C. § 1904 note (1976) (Section 211(d)(1) of Economic Stabilization Act of 1970, incorporated via 15 U.S.C. § 754(a)(1) (1976)).

■ Based on the proof before it, DOE correctly found that exception relief was

---

2. Other suppliers are pursuing administrative protests within DOE.

warranted. Ample evidence supports AAF's capacity to produce gasohol. The company had capital and land, it had made arrangements for transportation, storage and blending, its development of production facilities was on-track, and it was committed to the application of new technology in its alcohol-enhancement process. Significant demand existed for the product, and AAF had made diligent efforts to locate a voluntary supplier of unleaded gasoline. Suppliers were, however, frozen by the complicated allocation scheme into patterns of supply previously established. 10 C.F.R. § 211 (1979). Prevention of gasoline sales to new customers was thus directly attributable to the agency's own regulations.

Similarly, DOE's determination that a gross inequity existed is well substantiated. AAF was a potential new entrant into the petroleum business, offering as its product an important energy source. Ample evidence exists that gasohol is well designed appreciably to alleviate shortages of petroleum products. Both Congress and the President have moved to encourage development of alternative energy sources such as gasohol in an effort to reduce the nation's dependence on foreign energy supplies.[3] The present emergency led the Congress to intervene. Although the major oil companies naturally would act to preserve their competitive positions, Congress identified considerations that were deemed more significant in the public interest. Preservation of independent competitors, equitable distribution of petroleum products throughout the industry, and expansion of readily usable energy sources are, for example, among the major energy objectives that would be frustrated in the absence of exception relief in this case. *See* 15 U.S.C. §§ 753(b)(1)(D), (F); 761(a) (1976). Under DOE guidelines, such considerations are sufficient to establish gross inequity. Exceptions and Appeals Guidelines, *supra*, ¶ 80,006 at 80,010. *See Atlantic Richfield Co.*, 4 FEA ¶ 80,575 (1976); *Macmillan Ring-Free Oil Co.*, 1 Exceptions & Appeals

¶ 20,733 (1974). Indeed, a comparable public policy showing by Amoco earlier exempted that company temporarily from regulatory constraints on its own gasohol production program. *Amoco Oil Co.*, 3 DOE ¶ 82,073 at 84,704 (1979). *See also Twin City Barge & Towing Corp. v. Schlesinger*, 603 F.2d 197, 201 (Em.App.1979).

The separate argument that OHA exceeded its authority may essentially be reduced to whether or not the agency was compelled to proceed by rulemaking from the start. Exception relief is available only if DOE "determines that a more appropriate proceeding is not provided." 10 C.F.R. § 205.55(b)(1). AAF first sought a supplier through assignment, *see* 10 C.F.R. § 211.-12(e)(3), but was informed by the agency that no such action would be taken. It then requested exception relief, the first gasohol manufacturer to make such a request. The agency, faced with a competent applicant proposing to satisfy a perceived public need which existing regulations could not accommodate, moved to fill the void on an interim basis. At the same time, DOE promptly began exploring the prospect of treating gasohol production and its attendant supply problems through rulemaking. The agency informed the public that it was considering development of a rule in this area. 44 Fed.Reg. 68,223 (Nov. 28, 1979). After further consideration, it recently issued a notice of proposed rulemaking. 45 Fed.Reg. 34,846 (May 22, 1980). Comments have been solicited and hearings scheduled, with the intent of formulating a comprehensive approach to assure continued supplies of unleaded gasoline for use in gasohol production.

The agency has acted responsibly on an important policy matter where prolonged *ad hoc* decisionmaking would not be advisable. Its entertainment of exception applications must be viewed in this context. There is no ground for concluding that case-by-case review will persist once the general rule which is now apparently imminent is in place. So long as the exception does not

---

3. *See* 26 U.S.C. § 4081 (1976 & Supp. II 1978) (exempting gasoline/alcohol blends from tax on sale of motor fuels); 15 Weekly Comp. of

Pres.Doc. 1235, 1239 (July 15, 1979) (promoting *inter alia* production of gasohol).

become the rule, DOE's choice of proceedings was reasonable and involved no abuse of discretion. *Marathon Oil Co. v. DOE*, 482 F.Supp. 651, 658 (D.D.C.1979). *See generally NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974); *SEC v. Chenery Corp.*, 332 U.S. 194, 202–03, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947).

Finally, Amoco's constitutional objections are insubstantial. Any defect in notice to Amoco that may have existed was effectively cured well before issuance of a final decision. Plaintiff had ample opportunity to exercise its right to be heard at the July 10, 1979, hearing. That it made good use of such opportunity is shown by the modifications it secured in the final order. The lack of access to certain confidential material concerning choice of suppliers is not of constitutional magnitude, if indeed a violation at all.

No grounds have been established for disturbing the agency's judgment. Accordingly, plaintiff's motion for summary judgment is denied and defendants' motion for summary judgment is granted. The case is dismissed.

SO ORDERED.